Day, C. J.
The material question in this case depends on the construction of a deed. The case, so far as essential to the question, is as follows.
*A. and E. D Wolf brought suit in the common pleas of [464 Yinton county against Bobo and Sry, to recover damages occasioned by their mill-dam flooding land of the Wolfs.
Bobo and Sry sot up as a defense that the Wolfs hold the land alleged to be injured, by deed from P. and S. H. Brown, which was known as the “ Colvin tract,” of about one hundred and sixty acres; that said tract of land was conveyed to them, subject to a prior deed of the Browns to one Richmond, conveying to him 2 49-100 acres, containing a mill privilege, with the unlimited right to flood the “ Colvin tract;” and that they were the grantees of all said rights, by deed from Richmond.
The description of the land in the deed to Richmond is as follows: “ Beginning at the southwest corner of the east half of the southeast quarter of section number twenty, in township number eleven, range number seventeen ” — describing it by course and dis *465 tance^-“ containing two acres and forty-nine hundredths of an acre, and also containing the Colvin mills,” and the water privileges thereunto belonging, which extends up the creek ou the balance of said section, for the purpose of building mills below said Colvin mills, and damming up said creek.”
The deed contains, after the warranty clauses, the following ■clause: “Also it is understood that the said Richmond is not to build any dam on said creek that runs through said land above said Colvin mills, but the right to back up the water from dams below the Colvin mills as far as said Richmond or his heirs or assigns may think proper.”
The creek runs through the Colvin tract in an easterly direction. The tract conveyed to Richmond does not extend up the creek to the section line, which is the west line of the Colvin tract, nor •does it extend to the east line of the Colvin tract.
When the deed was made to Richmond, he owned the land adjoining the Colvin tract on the east. The land on the west of that tract, called the Johnson tract, was then owned by other parties.
About eight years after the deed was made to Richmond, the ■dam of Bobo and Sry was built on the Richmond land, below 465] *the Colvin tract, and raised the water at the section line above the Colvin mills to the height of four feet. By reason of raising the water to that height, more of the Colvin tract is inundated than was embraced ih the Colvin mills privilege, and more than would be by any dam below the mills raising the water to the height ■of the Colvin mills privilege only.
The court charged the jury: “That, by virtue of the conveyance from the Browns to Richmond, taking the whole instrument together, the defendants had only the right to dam the water of said ■creek, by means of their reservoir dam, up to the said quarter-section line between said Colvin and Johnson tracts of land, the same being the extent of the right granted by the deed.”
Under this construction of the deed, a verdict and judgment were rendered against Bobo and Sry. Thereupon, having taken due exception to the charge, they brought their petition in error in the district court, which affirmed the judgment of the common pleas; and now they prosecute their petition in error in this court, to reverse both these judgments, on the ground that the common pleas erred in the construction of the deed in question, as given in the charge to the jury.
*466 , The question, therefore, presented for our consideration, is whether the court of common pleas gave a right construction to this deed. In determining this question, we must seek for the real meaning intended to be expressed by the language used in the deed. For this purpose we may read it in the light of the circumstances that surrounded the parties at the time it was executed.
It is clear, from the premises of the deed, that it was intended to ■convey a piece of land specifically and carefully defined, both as to its bounds and quantity. It is equally clear that the mills thereon, “and the water privileges thereunto belonging,” were to be con-vcyed.
The extent of this water privilege is not so clearly defined. But it is described as extending “up the creek” from the mills, and is •on the quarter-section where the land conveyed *is situated, [46i> ■though not wholly embraced in the land specifically conveyed.
_ This is all that in the granting and descriptive clauses of the deed purports to be definitely conveyed. There is, however, a clause .added to this part of the deed, declaring the “purpose” for which the property was convoyed. It is stated to be “ for the purpose of .building mills below said Colvin mills, and damming up said creek.”
If the deed contained no other description of the property and rights granted thereby, it could not be claimed that anything more was granted than the two acres and forty-nine hundredths of an ¡acre of land, the Colvin mills and the water privileges belonging thereto, and the right to build mills on that specific piece of land, below the Colvin mills, and to dam up the creek to the extent of the privilege belonging to the Colvin mills. Especially would this ¡seem to be so, since the Colvin mills and water privilege, at the time the deed was made, were not in use, nor capable of use without being rebuilt. But it appears that something more than a declaration of a mere purpose was intended by that clause, and that the meaning of the parties was not fully, or was so doubtfully, expressed, that it became necessary to add an explanatory clause, to ■declare what was “ understood ” by them. According^, after the warranty and before the testatum clauses of the deed, such a clause was inserted. It would seem, from the language used in this clause, that it was inserted to define what was intended to be “ understood” by the indefinite clause inserted in the former part of the deed, declaring the “purpose” for which the conveyance was made.
It was, therefore, declared to be “ understood ” that, in “ damming *467 up said creek,” no dam was to be built above the Colvin mills. This* is a declaration that, so far as the clause stating the purpose of the-conveyance enlarges the grant, it must be taken subject to that limitation.
A very obvious reason for this limitation is, that to obtain a practical head of water by a dam further up the creek, the water would have to be raised higher at that point than by the old dam, 467] and would, therefore, flood further back than *would be-done by a dam built on the old site at the Colvin mills.
It thus appears that one purpose of the added clause was to exclude such a construction of the deed as would make it grant the right to dam up the creek, above the Colvin mills, to an extent further than that enjoyed under the Colvin mills privilege, expressly granted.
After having stated what shall not be understood by the grant,, as to damming up the creek above the Colvin mills, it is stated, in the added clause, what right the grantee may enjoy in damming it up below the Colvin mills. Ho was to have “ the right to back up> the water from dams below the Colvin mills.” This was an enlai’gement of the “water privileges” belonging to the Colvin mills; for a dam built below those mills would necessarily overflow land not embraced in the Colvin mills privilege, which extended “up tbecreek” only. This would especially be the ease if the dam was-built high enough to enjoy the full extent of the Colvin mills privilege, and the quantity of land overflowed would be increased as the distance of the dam from the mill might be increased. Hence it became a matter of material importance to define the extent of this enlarged privilege. It was therefore declared to be understood that the water might bo backed up “ from dams below the Colvin, mills as far as ” the grantee might “ think proper.”
The chief difficulty in the case arises on the construction of this-part of the added clause. It is claimed that it grants an unlimited right to flood the quarter-section owned by the grantor, on which, the Colvin mills stood. If this was the intention of the grantor, it. was easy to express it in plain and clear terms. There was no necessity for the guarded language used in the premises of tho deed and in the explanatory clause.
Instead of conveying the Colvin mills site, with an unlimited right to flood the quarter-section on which they stood, he con-, veyed, with the site, a specific water privilege, which is conceded *468, 469 to be of limited extent, and further limits the right of damming up the creek to dams built below the Colvin mills.
*The construction of the concluding part of the added [468-clause, as claimed, is inconsistent with the other parts of the deed;, nor does it comport with the reasonable supposition that the grantoz’, if he had intended to grant the l’ight to overflow all his land, would have expressed it izz unqualified terms.
But if the part of the clause under consideration, following that excluding the right to build a dam -above the Colvin mills, be construed as defining the extent of the z-ight to build dams below the Colvin mills, we find a construction that harmonizes with every part of the deed, and is consistent with all the surrounding circumstances.
Richmond, the gz’antee, owned the land adjoizzing that of the-grantor’s, on the east, and, it appears, desired to build mills on his own land, below the Col vizi mills, and for that puz’pose desired to own the Colvin mills water pz’ivileges, with the right of backing' the water up the cz*eek from some point below the Colvizz mills, it may be presumed, to the extent, at least, of the water privileges of those mills. It was about eighty rods frozn the Colvin mills, down the creek, on the premises of the grantors, to the premises of the grantee. A dam, built at the line between the paz-ties, high enough, to raise the water to the extent of the Colvin mills privilege, would overflow about ton acres more of the land belonging to the grantors, than could be flooded under that privilege.
Richmond, it would seem, desired to have the control of the-creek from azzd below the Colvin mills to his own premises, for the-purpose of backing up the water from any point he might “ think proper” to build a dam.
This was a water pz’ivilege, in addition to that of the Colvin mills, which Richmond zzeedod for the execution of his purpose, and that was attempted to be secured by the clauses of the deed giving-rise to the question under consideration.
In granting this enlarged pz’ivilego, especial reference is made, in the added clause, to the place of building dams on the creek, while-none was to be built above the Colvin mills, they might be below. If the phrase “ as far as” be applied as modifying the word “ below,” the moaning of the sentence will be izz harmony with the whole clause, and, as we *have seezz, with the entire deed. Nor .is [469’ this construction inconsistent with the grammatical relations of the- *470 : sentence. The meaning, then, is rendered clear, that, while Richmond must not build a dam above the Colvin mills, he might back ■up the water from dams built below as far as he might think proper to build them.
If, however, this rendering of the sentence be not correct, and the phrase “as far as” be regarded as referring to the word “up,” so as to make the sentence mean that Richmond might back the water up as far as he might think proper, we are of opinion that,
• construed in connection with the other parts of the deed, it was intended to confer the right to back up the water below the Colvin mills, on that part of the creek not embraced in the Colvin mills privilege, to an extent sufficient to enjoy that privilege, but not to
• extend beyond it; for the whole object of that part of the deed was to enlarge the privilege below the mills, and to exclude the idea of •enlarging it above.
The correctness of this construction of the deed is by no means without doubt, but, on the whole, we are unable to say affirmatively ••that the court below erred in construing it as they did.
It follows that the judgment of the district court must be affirmed.
Brinkerhoff, Scott, and White, JJ., concurred.
Welch, J., did not sit in the case.